Harold Tessler, J.
In this action for breach of contract, plaintiff sues to recover the sum of $14,993.36 which it claims is a lt dividend ” to which it is entitled under its contract of insurance with the defendant because of its favorable claim experience during the period September 13, 1965 through August 31,1966. The facts are almost entirely without dispute.
In the spring of 1965, plaintiff was awarded a contract for the transportation of schoolchildren in New York City. The plaintiff, for all intents and purposes, replaced Children’s Bus Service, Inc., in such transportation activities commencing with the fall school term on September 13,1965. The subject contract *490 between the parties herein provides group health insurance benefits for plaintiff’s employees. It appears that on September 13, 1965, when the contract went into effect, Varsity had a total of 1,070 employees, 720 of whom had been employed by Children’s, the latter apparently having terminated its activities at the end of the June, 1965 school term. In its agreement with the employees’ union, plaintiff agreed to be bound by the existing bargaining agreement between Children’s and the union, which, amongst other things, required the employer to provide the insurance benefits to its employees without cost to the latter. In making application for the coverage, plaintiff, under date of November 22, 1965 (enrollment letter), wrote to the defendant that ‘ ‘ a transfer of the existing group, and the benefits, costs and other group policy provisions applicable to Children’s Bus and Local 1181 shall be applicable to our group ”. It is conceded that there is and was no connection or affiliation of any kind between Children’s Bus and Varsity.
On December 16, 1965, premiums were paid in full by the plaintiff covering the period September through November, 1965 and on December 29, 1965 the premium was paid for that month. On January 5, 1966, defendant sent the insurance contract to the plaintiff with a letter stating that the contract was an extension of the prior contract with Children’s and “that any dividends due or accrued losses resulting from the former contract shall apply to this group contract. If this contract is satisfactory to you, please sign the attached copy of this letter and return it to me.” Plaintiff neither signed nor returned a copy of the letter, nor did it reply to the communication in any way — nor did it reply to a similar follow-up letter sent by the defendant on August 29, 1966.
Belying on the writings mentioned above, defendant contends that it was entitled to charge the plaintiff with the accrued net loss for the period before July 1, 1965 of $14,993.36 sustained during Children’s operation under its contract with the defendant. It is perhaps significant to note at this point that during the period September 13, 1965 through August 31, 1966 (the first year of Varsity’s operation under the subject contract) the claim experience was most favorable and resulted in a “ dividend ” of $28,794.59 for that period and it should be kept in mind that almost 70% of Varsity’s employees were those of Children’s during the previous year.
Defendant urges that plaintiff’s letter of November 22, 1965, together with defendant’s writing of January 5, 1966, constitutes the contract between the parties and, as such, authorizes *491 the defendant to charge Children’s negative claim experience to the plaintiff.
Plaintiff contends that the enrollment letter of November 22, 1965 and the contract (policy) itself comprise the entire agreement between the parties and do not sanction defendant’s charge.
The sole issue is whether the agreement between the parties permits the defendant to charge or offset its earlier loss experience with Children’s to the “ retroactive premium adjustment ” (“ dividend ”) due and payable to Varsity based on the later favorable claims experience of Varsity’s employees.
Subdivision 1 of section 142 of the Insurance Law delineates that which constitutes a contract of insurance and requires that every policy of insurance shall contain the entire agreement and, further, that the application (or enrollment) for the contract is not part of the agreement unless a copy of the application is attached to or indorsed upon the policy at its issuance. It is clear that despite defendant’s initial advice and request dated January 5, 1966 for approval — and repeated on August 29, 1966 — to wit, “ that any dividends due or accrued losses resulting from the former contract shall apply to this group’s contract ’ ’, plaintiff never gave its consent or indicated its agreement to this proposal or condition. Despite this lack of action by the plaintiff, which may fairly be construed as a rejection of defendant’s proposal, defendant continued to service the contract and accept the premiums. In fact, as though indicating its awareness that it lacked authority to charge the plaintiff with Children’s past experience, defendant repeated its request and again solicited plaintiff’s agreement and consent on August 29,1966 — again with no response. Defendant argues that ‘ ‘ he who is silent when he ought to have spoken, will not be heard to speak when he ought to be silent” (5 Williston, Contracts [3d ed.], § 688). Defendant urges that plaintiff has been estopped from its present position by reason of its silence with reference to defendant’s writings.
I cannot agree. In the court’s opinion, the duty to speak was that of the defendant upon its failure to twice obtain a favorable response and agreement to its proposal. It was defendant’s obligation to do more than sit back, accept the premiums and, after the realization of plaintiff’s favorable claim experience, charge the latter with Children’s dismal performance. At any and all times after plaintiff’s failure to respond to the proposal of January 5, 1966, defendant could have moved forward with either persuasion or some action as *492 would be deemed advisable by reason of plaintiff’s apparent breach of what defendant claimed to be the existing contract. The defendant did nothing other than to sit back and at the conclusion of the contract year accommodate its action to its unilateral position.
_ In addition, defendant’s action herein appears to be in violation of subdivision 9 of section 221 of the Insurance Taw which limits^ “ readjustment of the rate of premium based on the experience thereunder at the end of the first year or of any subsequent year of insurance thereunder, and such readjustment may be made retroactive only for such policy year.” The section additionally requires that “any such rate adjustment shall be computed on a basis which is equitable to all group accident, group health or group accident and health insurance policies ”.
It is important to note the testimony of Mrs. Black, senior vice-president of the defendant, to the effect that the latter never advised the plaintiff that the rate being charged it was higher than the standard or what is known as the community rate and that this higher rate was charged by the defendant based on the latter’s negative claim experience with Children’s. There is no doubt that the defendant would have charged the plaintiff on the basis of a community rate were it not for the former’s negative experience with Children’s.
Upon all of the evidence in the record, it is the court’s opinion that the contract of insurance herein did not include the defendant’s unilateral proposal of January 5,1966 to charge the plaintiff with Children’s unfavorable claim experience prior to July 1,1965. There was neither agreement nor authorization on the part of the plaintiff to such a charge. The contract of insurance as constituted provided for no such authorization, implied or otherwise.
The court finds that the deduction of $14,993.36 constitutes a violation of the contract on the part of the defendant. Accordingly, the court finds plaintiff is entitled to judgment in said sum against the defendant.